UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

AKARI JOHNSON and
HAZEL THOMPSON,

        Plaintiffs,

CASE NO.: 4:24-CV-10017-JEM

v.

MMI 82, LLC, and
THE ENTHUSIAST LLC,

        Defendants.
_____/

**PLAINTIFFS' MOTION FOR SANCTIONS
BASED ON THE DEFENDANTS' SPOLIATION OF EVIDENCE**

**I. INTRODUCTION**

Plaintiffs, AKARI JOHNSON ("Plaintiff Johnson") and HAZEL THOMPSON ("Plaintiff Thompson") (collectively herein "Plaintiffs"), through their undersigned counsel and pursuant to Fed. R. Civ. P. 37, Local Rule 7.1, and other applicable rules and laws, requests the Court to impose spoliation sanctions against Defendants MMI 82, LLC ("Defendant MMI") and THE ENTHUSIAST LLC ("Defendant ENTHUSIAST") (collectively "Defendants"), based on the intentional destruction of records that Federal law required them to maintain and preserve. The records that Defendants were required to make and keep included timesheets and payroll records. Defendants destroyed those records, notwithstanding the requirement to maintain and preserve them, hindering Plaintiffs' ability to prove their claims. Considering the recordkeeping requirements, the impact on this case, and the Defendants' bad faith, Plaintiffs seek the Court appropriately sanction the Defendants.

1

## II. FACTUAL AND PROCEDURAL HISTORY

1. Defendants are each owned by Oneil Khosa ("Khosa").

2. At all times material to this action, Defendants collectively run and operate a hotel named Casa Morada.

3. Defendant MMI identified Khosa as the owner of Defendant MMI. *See* Exhibit A at p. 3.

4. Defendant MMI employed Aileen Gonzalez ("Gonzalez") as General Manager of Defendant MMI from approximately 2016 through early 2024. *See* Exhibit B at ¶ 6.

5. Defendant MMI employed Daniella Rodriguez ("Rodriguez") as General Manager from approximately early 2024 through the Summer of 2024. *See* Exhibit C at ¶ 6.

6. Throughout Plaintiffs' employment, Defendants "maintained timesheets by using a clock that employees could 'punch in' and 'punch out' with." *See* Exhibit B at ¶ 19.

7. Gonzalez used these timesheets to calculate employee hours and documented those hours onto a spreadsheet, which was stored on a company laptop for Defendants. *Id*.

8. Gonzalez informed Khosa where the spreadsheets with employee hour information was kept, and she further informed Khosa how to access the spreadsheets. *Id*.

9. In response to Plaintiff Thompson's written discovery request for Defendants to produce all timesheets/punchcards, shift schedules, and payroll records, Defendants each replied, "None." *See* Exhibit D at pp. 6-7 (response to request for production number 18) and Exhibit E at p. 6 (response to request for production number 18).

10. In response to Plaintiff Johnson's written discovery request for Defendant ENTHUSIAST to produce all timesheets/punchcards, shift schedules, and payroll records,

2

Defendant ENTHUSIAST replied, "None." *See* Exhibit F at p. 6 (response to request for production number 18).

11.     In response to Plaintiff Johnson's written discovery request for Defendant MMI to produce all timesheets/punchcards, shift schedules, and payroll records, Defendant MMI produced DEF 000013 – DEF 000017. *See* Exhibit G.

12.     Defendants produced the extent of the records they maintain as to Plaintiffs' timesheets/punchcards, shift schedules, and payroll records, totaling eleven (11) timecards for Plaintiff Johnson that cover approximately thirty (30) total days of work, and zero (0) timesheets for Plaintiff Thompson. *See* Exhibit G. Defendants further produced somewhat illegible checks they issued to Plaintiffs without any accounting of payment. *See* Exhibit H.

13.     Plaintiffs were employed by Defendants for over seven (7) months.

14.     On or around January 21, 2025, Rodriguez signed a declaration stating that "[i]n early 2024, the United States Department of Labor ("DOL") investigated Casa Morada. I was responsible for interacting with the DOL investigator, but Oneil made sure he approved all of my email communications before I sent them. During this investigation, Oneil instructed me to make key files, including paychecks, paystubs, and other financial records, 'disappear,' as if 'there was a hurricane that destroyed them.' Oneil asked me to destroy key financial records even though I was not comfortable doing so. I had no choice but to follow Oneil's orders and destroy some of these key documents." *See* Exhibit C at ¶ 18.

15.     Importantly, in or around January 25, 2024, and January 31, 2024, Plaintiffs' counsel respectively sent Defendant MMI and Defendant ENTHUSIAST a claim letter that included a section explaining Defendants' "obligation to preserve all records," in anticipation of

litigation, including a specific notice to Defendants that "it is also your obligation to preserve all pay records as well as any other records relating to our client." *See* Exhibits I and J.

16. Defendants' production confirmed the DOL investigation began in or around April of 2024, several months after Plaintiffs' counsel issued claim letters to each Defendant. *See* Exhibit K.

17. Nonetheless, Rodriguez explained that Khosa ordered her to destroy key financial records during the DOL investigation which was initiated after Plaintiffs' counsel notified Defendants of pending litigation. *See* Exhibit C at ¶ 18.

18. After Rodriguez's employment with Defendants ended, Defendants hired Valerie Frapp ("Frapp") as the interim General Manager for Casa Morada.

19. At Frapp's deposition on February 26, 2025, Frapp testified that when she first arrived to Casa Morada, she found a majority of the documents stored in the file cabinets to be water-damaged, as if a storm had destroyed the documents.

20. Frapp's testimony confirms Rodriguez's statements that records had been destroyed.

21. Although Frapp does not have personal knowledge as to how these records came to be destroyed via water damage, her testimony supports Rodriguez's claims that Khosa ordered Rodriguez to make the documents "'disappear,' as if 'there was a hurricane that destroyed them.'" *See* Exhibit C at ¶ 18.

22. To date, Defendants have produced eleven (11) timecards for Plaintiff Johnson that minimally reflect the hours worked during his employment, and have not produced a single document reflecting the hours Ms. Thompson worked during her employment.

4

23. To date, as indicated by the deposition testimony of Khosa and Frapp, Defendants do not have any knowledge of where Plaintiffs' complete set of timesheets/punchcards, shift schedules, and payroll records are stored, located or maintained.

### III. LEGAL STANDARD

**A. The FLSA Requires Employers To Make And Maintain Records.**

As Defendants have not denied being an FLSA-covered employer operating in the State of Florida, Defendants possessed a duty under the FLSA to maintain timekeeping and payroll records which they destroyed. As long held by the U.S. Supreme Court and codified by the FLSA, "it is the employer who has the duty under ... the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in the position to know and to produce the most probative facts concerning the nature and amount of work perform." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see* 29 C.F.R. § 552.110(a). For a minimum of three years, every FLSA employer must maintain and preserve records of the "total hours worked each week by the employee for the employer[.]" 29 C.F.R. § 552.110(a). These records may be kept in any form so long as this information is properly recorded. *Id.*

Defendants, therefore, possessed a duty under the FLSA to maintain these records for a minimum of three years.

**B. The Court Properly Sanctions Parties Who Destroy Evidence In Bad Faith.**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire C Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). The Court possesses "broad discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler*

5

*Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.*

The Eleventh Circuit Court of Appeal summarized the law relating to the imposition of the sanction of an adverse inference in *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020), as follows:

> Spoliation is "defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Green Leaf Nursery v. E.I. DuPont De Nemours C Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (quotation marks and citation omitted). In some circumstances, a party's "spoliation of critical evidence may warrant the imposition of sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). Because spoliation is an evidentiary matter, "federal law governs the imposition of spoliation sanctions." *Id.* at 944. Sanctions for spoliation may include "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Id.* at 945.
>
> When deciding whether to impose sanctions, a number of factors are relevant: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed." *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018) (citing *Flury*, 427 F.3d at 945).
>
> Spoliation sanctions—and in particular adverse inferences—cannot be imposed for negligently losing or destroying evidence. Indeed, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). And bad faith "in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). This consideration is key in evaluating bad faith because the party's reason for destroying evidence is what justifies sanctions (or a lack thereof).

Sanctions for the destruction of evidence must be "in bad faith" and not simply negligent. *Foulke v. Weller*, 2024 WL 2761778, at *12 (11th Cir. May 29, 2024). The Court can then determine the type of sanctions to impose based on the conduct at issue:

> Available sanctions include, but are not limited to, the following: default judgment, adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result

6

>of the spoliation. *Citing Flury*, 427 F.3d at 945. Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *St. Cyr v. Flying J. Inc.*, 2007 WL 1716365, at *4 (M.D. Fla. June 12, 2007).

*Kelley v. TaxPrep1, Inc*, 2015 WL 12839254 at *2 (M.D. Fla. July 27, 2015).

## IV. ARGUMENT

Plaintiffs request the Court to strike Defendants' pleadings, specifically as to the FLSA claims, as a sanction for destroying records Federal law required them to maintain and preserve, adversely impacting Plaintiffs' ability to prove the days and times they worked, the duties they performed for Defendants, and the damages to which they are entitled to recover from Defendants' failure to pay Plaintiffs unpaid and overtime wages required by the FLSA. The Court has the discretion in sanctioning the Defendants to award sanctions ranging from striking their pleadings specifically as to the FLSA claims to imposing an adverse inference. If the Court is not inclined to strike the Defendants' pleadings, then it should at the very least impose an irrefutable presumption against the Defendants for the jury to deem certain facts admitted and established in favor of the Plaintiffs, after considering Defendants' bad faith conduct in intentionally destroying key financial records, and the impact on Plaintiffs' ability to present their claims.

   A. **The Court Properly Determines That Sanctions Are Appropriate.**

As owners, operators, and administrators of Casa Morada, the Defendants were obligated to make and maintain records relating to the days and times Plaintiffs worked, the duties they performed, and payroll records resulting from their employment with Defendants, including but not limited to the key financial documents they destroyed. The evidence in this case is that although Defendants made and/or kept the FLSA-required documentation, they intentionally destroyed

7

them in contravention of Federal law. Based on the record evidence, Plaintiffs carry the burden of showing:

> that evidence once existed 'that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case;' that the Defendant engaged in an affirmative act causing the evidence to be lost; that it did so while it knew or should have known of its duty to preserve the evidence; and that 'the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Schultze v. 2K Clevelander, LLC*, 17-CV-22684, 2018 WL 4859071, at *10 (S.D. Fla. Oct. 4, 2018) (sanctioning the defendant for its bad faith in destroying evidence).

    i.    **The Missing Evidence Was Crucial To Proving Plaintiffs' FLSA Case.**

Defendants documented the days and times when Plaintiffs worked, and they required Plaintiffs to document the times they started and stopped work or the days they worked. Plaintiffs' timesheets and payroll records associated with their timesheets were drafted by the General Managers for Defendants. From these records, Plaintiffs could have better determined the dates they worked for Defendants, an approximation of the hours they worked each day/shift, and provided the jury with documentation confirming that their job duties included less-favorable tasks as Plaintiffs testified to at deposition. The timesheets and payroll records, as the sole documentary evidence that would conclusively establish the dates when Plaintiffs worked, and which would establish that they were at work at certain times – day and night – and part of their job duties, would have been the most critical evidence for Plaintiffs' FLSA claims.

    ii.    **Defendants Acted In Bad Faith By Destroying The Evidence.**

Defendants admit through the deposition testimony of their owner/CEO, Oneil Khosa, that the timesheets and payroll records existed at one time. Gonzalez, the former General Manager for Defendants during Plaintiffs' employment, declared under penalty of perjury that she maintained timesheets and records for Plaintiffs that she stored on a company computer and informed Khosa

8

where they were and how to access them. *See* Exhibit B at ¶ 19. Rodriguez, the former General Manager for Defendants subsequent to Plaintiffs' employment, declared under penalty of perjury that Khosa demanded she destroy key financial records during a Department of Labor investigation, and that she took affirmative steps to destroy these documents. *See* Exhibit C at ¶ 18. Defendants' conduct in destroying perhaps the only evidence of the dates and times worked by Plaintiffs constitutes bad faith given that: (i) the records were material to Plaintiffs' ability to prove their damages under the FLSA and to Defendants' ability to substantiate their defense that Plaintiffs did not work as often as they claim; (ii) Defendants' prior general manager, Rodriguez, conceded to having destroyed the records, which a current employee for Defendants, Frapp, testified she found destroyed; (iii) Defendants were under a duty to preserve these documents under the claim letters issued to them by Plaintiffs' counsel and pursuant to the Department of Labor's communications informing them of a pending investigation; and (iv) there is no credible explanation for Defendants' destruction of their employees' records, and they have proffered no reason for the same.

In *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343 (S.D. Fla. 2016), the Court analyzed the type of bad faith necessary to support the imposition of an adverse inference based on the spoliation of evidence. The Court in *Austrum* recognized that employers covered by Title VII of the Civil Rights Act of 1964 were required to preserve employment applications for designated periods of time under 29 C.F.R. §1602.14, that the defendant failed to comply by not preserving the plaintiff's employment application, and that the defendant's practice was to not preserve employment applications notwithstanding the requirements imposed by §1602.14. *Id.* The Court decided to impose sanctions against the defendant in by finding it acted "in bad faith" and granting the plaintiff's request for an adverse inference:

9

> Regarding the required "bad faith" factor, the Court finds that Federal acted in bad faith as that term is defined in *Flury*. Federal has no legitimate excuse for having a practice of discarding applications that it had a legal obligation to preserve under federal regulations. Federal's culpability rises above mere negligence. This is not a case where the application was accidentally destroyed while the employer otherwise complied with its legal obligations. Instead, the discarding of the applications was intentional. Whether intentionally or ignorantly, Federal completely disregarded the EEOC's recordkeeping regulation, which was promulgated specifically to ensure that personnel records such as employment applications are preserved for employment discrimination litigation. *See EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1195 (4th Cir.1981) ("The affirmative obligation imposed by s 1602.14(a) to preserve records was clearly designed to protect Title VII plaintiffs from an employer's destruction of possibly damaging evidence."). Federal may not have known of Austrum's claim when it discarded his application, but the regulation put Federal on notice of the application's importance to potential employment discrimination litigation and the need to preserve it.

*Austrum*, 149 F. Supp. 3d at 1351-52. Here, Defendants similarly acted in bad faith in destroying key financial records during this litigation and during a Department of Labor investigation.

### B. The Relief Sought.

Within the Eleventh Circuit, spoliation sanctions may include varying relief such as dismissal of the case, entry of default judgment, exclusion of expert testimony, or "a jury instruction on spoliation which raises a presumption against the spoliator." *U.S. EEOC v. GMRI, Inc.*, No. 15-cv-20561, 2017 U.S. Dist. LEXIS 181011, at *62-63 (S.D. Fla. Nov. 1, 2017) (quoting *Flury*, 427 F.3d at 945). In determining the appropriate level of sanctions to be imposed upon a spoliating party, "[t]he Court has broad discretion to impose sanctions derived from its inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Smith v. Sohaan Dev., Inc.*, No. 6:12-cv-1369, 2013 U.S. Dist. LEXIS 150849, at *5 (M.D. Fla. Oct. 1, 2013).

Within the Eleventh Circuit, courts "frequently enter orders in cases where parties seek sanctions, including default judgments or dismissals, for spoliation." *Collar v. Abalux, Inc.*, No. 16-cv-20872-Lenard/Goodman, 2018 U.S. Dist. LEXIS 112086, at *36-37 (S.D. Fla. Jul. 5, 2018) (citing *Atlantic Sea Co., S.A., v. Anais Worldwide Shipping, Inc.*, No. 08-23079-CIV, 2010 U.S.

Dist. LEXIS 65262, 2010 WL 2346665 (S.D. Fla. June 9, 2010) (Brown, J.); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317 (S.D. Fla. 2010) (O'Sullivan, J.); *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 U.S. Dist. LEXIS 111659 (S.D. Fla. Nov. 16, 2009) (Rosenbaum, J.)). "The courts have the inherent power to enter a default judgment as punishment for a defendant's destruction of documents[.]" Id. As the most severe form of sanctions for spoliation, default judgment should be entered "when there is a showing of bad faith and lesser sanctions will not suffice." Id. at *7 (citing Flury, 427 F.3d at 944-45; *Aldrich v. Roche Biomedical Laboratories*, 737 So.2d 1124, 1125 (Fla. 5th DCA 1999).

As discussed above, Defendants acted in bad faith by destroying the only documents reflecting the dates and times worked by Plaintiffs, knowing they needed to keep them. They maintained a duty as an employer under the FLSA to preserve Plaintiffs' time and pay records. Defendants have not – because they cannot – offer any legitimate explanation for destroying these documents despite their duties to Plaintiffs. This bad faith conduct has completely inhibited Plaintiffs' ability to prove their case through documentary evidence and can only be redressed by the highest level of spoliation sanctions: striking Defendants' pleadings as to Plaintiffs' FLSA claims and entry of a default judgment as to Plaintiffs' FLSA claims in favor of Plaintiffs.

In the alternative, Plaintiffs request that the Court impose sanctions in the form of an adverse inference jury instruction. This type of jury instruction ranges "in differing and ever-increasing levels of harshness." *Id.* at *63. This Court has defined the varying levels of adverse inferences as follows:

> One type results in a jury being instructed that certain facts are deemed admitted and must be accepted as true. Another type results in the imposition of a mandatory, albeit rebuttable, presumption. A third type permits a jury to presume that the lost evidence is relevant and favorable to the innocent party. With this third type of adverse inference, the jury also considers the spoliating party's rebuttal evidence and then decides whether to draw an adverse inference.

*GMRI, Inc.,* U.S. Dist. LEXIS 181011, at *63. Here, Plaintiffs seek the first type of adverse inference described above – by instructing the jury to shall accept as true facts that Defendants are Plaintiffs' employers (under the FLSA), that Plaintiffs were non-exempt employees, that Plaintiffs worked 60-80 hours a week for the Defendants, and that Defendants failed to pay Plaintiffs for more than 40 hours of work per week for their work.

Plaintiff requests that the Court sanction the Defendants by entering a default judgment against the Defendants or in the alternative, an adverse inference jury instruction as to the financial records destroyed by Defendants, or even an entry of an award of attorney's fees and costs incurred in addressing Defendants' misconduct – given that: (i) the records existed at one time, as conceded by Defendants and Defendants' former General Managers; (ii) Defendants possessed a statutory duty to maintain these documents; (iii) the records would have facilitated Plaintiffs' ability to prove unpaid wages claims as, perhaps, the only documents evidencing the dates and times they worked; and (iv) Defendants acted in bad faith by destroying these logs during the litigation and a Department of Labor investigation, knowing they should have been kept.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully requests this Court enter an Order meting out the appropriate sanctions against Defendants, Defendant MMI and Defendant ENTHUSIAST, commensurate with their bad faith conduct in destroying key financial records, the adverse effects the destruction of those records has on Plaintiffs' ability to prove their claims through documentary evidence, the requirements imposed on Defendants to make and maintain the records, Defendants' knowledge of the requirements imposed on them to keep the records, and Defendants' ill intentions in destroying the records during this litigation and Department of Labor investigation.

## **CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for all parties have conferred in a good faith effort to resolve the issues raised by this motion, and Defendants' counsel advised that they oppose the relief sought herein.

Dated:  Miami, Florida
        May 27, 2025,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiffs*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on May 27, 2025, on all counsel of record on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

**SERVICE LIST**

**CALDERA LAW**
*Counsel for Defendants*
7293 NW 2nd Ave
Miami, Florida 33150
Tel: (786) 321-3811
Fax: (305) 665-6684
Email: eservice@caldera.law

ANTHONY V. NARULA, ESQ.
Florida Bar No.: 56546
anthony@caldera.law

RASHEEM JOHNSON, ESQ.
Florida Bar No.: 1011350
rasheem@caldera.law

JOANNA NIWOROWSKI, ESQ.
Florida Bar No.: 1031440
joanna@caldera.law