UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 4:24-CV-10017-MARTINEZ/SANCHEZ

AKARI JOHNSON and
HAZEL THOMPSON,

    Plaintiffs,

vs.

MMI 82, LLC and
THE ENTHUSIAST LLC,

    Defendants.
_____/

**RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS**

Defendants, MMI 82, LLC ("MMI") and The Enthusiast LLC (collectively, the "Defendants"), hereby file their Response to Plaintiffs' Motion for Sanctions Based on the Defendants' Spoliation of Evidence filed on May 27, 2025 [DE 44] (the "Motion").

**INTRODUCTION**

Plaintiffs' Motion is based entirely on the declaration testimony of Daniela Rodriguez, a former terminated employee of MMI, who has since recanted ever "destroying" any documents. *See* **Exhibit A** (D. Rodriguez Dep. 170:3-9 ("I did not destroy anything.")). And yet, despite this fatal deposition testimony by Ms. Rodriguez, Plaintiffs refuse to withdraw their Motion and still insist on seeking spoliation sanctions.

In addition, since the filing of Plaintiff's Motion—which would have been more appropriately styled as a motion to compel—MMI made a supplemental production of Plaintiffs' work schedule and a payroll spreadsheet that contains all the time kept by MMI for the work done by Plaintiffs, which now moots the Motion. Pursuant to applicable FLSA regulation, MMI was under no duty to keep *all* information regarding time records, and the retention of the payroll

spreadsheet that aggregated data from timecards satisfies all applicable record keeping requirements. Indeed, Plaintiffs' Motion explains that "[t]hese records may be kept in any form so long as this information is properly recorded." *See* Motion at 5 (citing 29 C.F.R. § 52.110(a)). More importantly, the fact that not ***every single*** timecard was produced for Plaintiff Johnson and time was never kept for Plaintiff Ms. Thompson, during the time she was a salaried and exempt employee, does not impact their case since they now have the payroll spreadsheet.

Accordingly, the Motion should be denied because (1) it is not based on reliable evidence, and (2) Defendants have produced evidence of all time worked by Plaintiff that they recorded. Should the Court find that there are still issues of fact that remain open, they must be resolved through an evidentiary hearing on the Motion.

## FACTUAL BACKGROUND

1. Defendant MMI owns and operates a 16-room boutique hotel, called Casa Morada (the "Hotel"), in Islamorada, Florida. **Exhibit B**, ¶ 7 (June 24, 2025 O. Khosa Decl.); **Exhibit C** at 43:12-16 (A. Gonzalez Dep.).

2. Defendant The Enthusiast LLC is an unaffiliated entity used solely to market a group of hotels around the country and has no operational or managerial control over MMI, the Hotel, or the Hotel's employees. Ex. B, ¶¶ 4-6, 9.

3. Plaintiff Hazel Thompson ("Thompson") was hired as a Lead Front Desk Agent at the Hotel in or around June 2023. Thompson was paid on an hourly basis until August 21, 2023, at which point MMI began paying her a salary and stopped requiring her to clock in and out of work as an exempt employee. Ex. C at 47:10-12, 106:7-16, 134:2-5, 185:19-186:1; **Exhibit D** at DEF000912, DEF000917 (Payroll Spreadsheet).

4. As the Lead Front Desk Agent, Thompson was responsible for overseeing and

supervising other front desk staff, and was paid a salary over the amount paid to other front desk employees. Ex. C at 106:7-107:6. Furthermore, Thompson acted as an Event Coordinator for the Hotel, with discretion and management responsibilities over events. *Id.* at 115:18-21.

5. Plaintiff Akari Johnson ("Johnson") was hired as a Front Desk Agent at the Hotel in or around July 2023. *Id.* at 109:9-12; **Exhibit E** at DEF000873 (Schedule). Johnson was paid on an hourly basis and clocked in and out of work each day he worked at the Hotel. Ex. C at 120:12-13, 134:11-12.

6. The Hotel's former General Manager, Aileen Gonzalez ("Gonzalez"), was responsible for employee schedules and payroll. *Id.* at 29:8-13, 129:21-131:22. Gonzalez would prepare weekly schedules setting forth the shifts for all Hotel employees and post the schedule in the Hotel. *Id.* at 129:21-131:22.

7. Gonzalez was also responsible for managing employee payroll. *Id.* at 29:8-13. Each week, she would collect all timecards for employees who were required to clock in and out and would input the hours worked, including any overtime, by each individual into a spreadsheet, where she would calculate the wages owed to each employee (the "Payroll Spreadsheet"). *Id.* at 123:24-124:1, 132:6-12, 133:3-11. Gonzalez would then send her calculations to the Hotel's owner to request a transfer of the funds needed for payroll and expenses from the Hotel's revenue account to the operating account. *Id.* at 126:5-21.

8. As part of her responsibilities, Gonzalez recorded and paid overtime wages to Plaintiff Johnson in 2023. *Id.* at 112:1-2; *see also, e.g.*, Ex. D at DEF000924.

9. In or around December 16, 2023, Plaintiffs Johnson and Thompson resigned from their positions at the Hotel. Ex. C at 147:14-15.

10. The former General Manager, Gonzalez, calculated the wages and overtime owed

to Plaintiffs for their last weeks of employment at the Hotel, and MMI paid Plaintiffs the amount determined to be owed by the former General Manager in or around January 2024. *Id.* at 135:22-136:5.

11. Gonzalez's replacement, Daniella Rodriguez ("Rodriguez"), worked at the Hotel from around December 2023 until August 2024. Ex. B, ¶ 10.

12. Rodriguez was fired from her position as General Manager because of her poor job performance and because she was responsible for losing a Rolex watch belonging to the Hotel's owner. Ex. B, ¶ 13.

13. Rodriguez, since signing a declaration that was drafted by counsel for Plaintiffs which formed the basis of the Motion, has since recanted ever "destroying" any documents. *See* Ex. A at 170:3-9 ("I did not destroy anything.").

14. The Hotel's owner, Oneil Khosa, denies ever instructing Ms. Rodriguez to destroy any documents in connection with any pending litigation or government investigation. Ex. B, ¶ 15.

## RELEVANT PROCEDURAL HISTORY

1. On February 22, 2024, Plaintiffs filed their initial complaint in this action, alleging additional unpaid overtime wages, among other causes of action unrelated to the Motion. DE 1.

2. On June 25, 2024, Thompson issued her First Request for Production to MMI, seeking, among other things, "the hours of employment that reflect work shifts and/or hours worked by Plaintiff in 2023, including but not limited to timesheets/punchcards, shift schedules, training schedules, payroll records, disciplinary/advisory meetings, and meeting schedules." DE DE 44-4 at 6-7.

3. Defendant MMI served its responses to Thompson's First Request for Production

on September 6, 2024. DE 44-4.

4. Similarly, on June 25, 2024, both Plaintiffs issued their First Requests for Production to Enthusiast, also seeking, among other things, "documents regarding the hours of employment that reflect work shifts and/or hours worked by Plaintiff in 2023, including but not limited to timesheets/punchcards, shift schedules, training schedules, payroll records, disciplinary/advisory meetings, and meeting schedules." *See* DE 44-5 at 6; DE 44-6 at 6.

5. Defendant Enthusiast served its responses to both Thompson's First Request for Production and Johnson's First Request for Production on November 8, 2024. *See* DE 44-5 at 6; DE 44-6 at 6.

6. On January 7, 2025, the Hotel's former General Manager, Aileen Gonzalez, signed a declaration upon request of Plaintiffs' counsel. DE 44-2.

7. On January 21, 2025, the Hotel's former General Manager, Daniella Rodriguez, signed a declaration upon request of Plaintiffs' counsel. DE 44-3.

8. Defendants filed a motion seeking to substitute their counsel on April 30, 2025 [DE 40], which the Court granted on May 2, 2025 [DE 41].

9. Plaintiffs never filed any motions to compel in connection with her First Request for Production.

10. Instead, on May 27, 2025, **nearly nine months after** MMI served its discovery responses, **four months after** Plaintiffs obtained the declarations they base their Motion on, and only after the Court extended pretrial deadlines [DE 43] following the substitution of defense counsel [DE 41], Plaintiffs filed the Motion alleging spoliation [DE 44].

11. In connection with preparing this Response, MMI deposed Daniella Rodriguez on June 5, 2025, and Aileen Gonzalez on June 17, 2025.

5

12.     Since the filing of the Motion, Defendant MMI has also produced Plaintiff's work schedule (the "Schedule") and the Payroll Spreadsheet referenced in the Motion, which contains all the information sought by Plaintiffs—*i.e.*, the number of hours worked by Plaintiff Johnson, the wages paid to Plaintiff Johnson for his regular and overtime wages, the number of hours worked by Plaintiff Thompson when she was an hourly wage worker, and the salary paid to Plaintiff Thompson after becoming a salaried and exempt employee. *See* Ex. D (Payroll Spreadsheet); Ex. E (Schedule).

## LEGAL STANDARD

"'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in **pending or reasonably foreseeable litigation**.'" *Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1291 (S.D. Fla. 2020) (quoting *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009)) (emphasis added). "The moving party carries the burden of proof" and "'must prove several things; first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense.'" *Penick*, 481 F. Supp. 3d at 1291 (quoting *Walter v. Carnival Corp.,* No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (listing the elements of spoliation as "(1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages").

"Even if all three elements are met, 'a party's failure to preserve evidence rises to the level

of sanctionable spoliation only where the absence of that evidence is predicated on bad faith, such as where a party **purposely loses or destroys relevant evidence**.'" *AZ55S, LLC v. Flinsco.com, LLC*, No. 22-CV-61658, 2023 WL 4564631, at *2 (S.D. Fla. June 30, 2023), *report and recommendation adopted*, No. 22-61658-CV, 2023 WL 4561628 (S.D. Fla. July 17, 2023) (quoting *Penick v. Harbor Freight Tools, USA, Inc.,* 481 F. Supp. 3d 1286, 1291 (S.D. Fla. 2020)) (emphasis added). "In this Circuit's spoliation precedents, bad faith 'generally means destruction [of evidence] for the purpose of hiding adverse evidence.'" *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023) (quoting *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020)) (alterations in original).

As highlighted by Plaintiffs' own Motion, "'[s]poliation sanctions—and in particular adverse inferences—**cannot be imposed for negligently losing or destroying evidence**.'" *Foulke v. Weller*, No. 22-13942, 2024 WL 2761778, at *12 (11th Cir. May 29, 2024) (quoting *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020)) (emphasis added). In other words, "spoliation sanctions [are] unwarranted" where "the record does not show a purposeful intent to alter or lose the items of evidence in question." *Foulke*, 2024 WL 2761778 at *12 (citing *Tesoriero*, 965 F.3d at 1184).

## ARGUMENT

### A. Plaintiffs' Motion Fails to Establish Spoliation by Defendants.

#### 1. The Motion is Based on Biased Testimony That Has Since Been Recanted.

Plaintiffs' Motion is based primarily on the now-recanted testimony of Daniella Rodriguez—one of the former General Managers of the Hotel and a biased witness who was terminated from her position at the Hotel due to her poor performance and responsibility in losing the Rolex belonging to the Hotel's owner.

In her January 21, 2025 declaration, Rodriguez stated that, in connection with a "DOL investigation, Oneil [Khosa] instructed [her] to make key files, including paychecks, paystubs, and other financial records, 'disappear,' as if 'there was a hurricane that destroyed them'" and that she "follow[ed] Oneil's orders and destroy[ed] some of these key documents." DE 44-3 at ¶ 18.

In her deposition on June 5, 2025, however, when she was asked about the above statement, Rodriguez clarified that the DOL investigation was triggered as a result of a different lawsuit, relating to a different former terminated employee, pertaining to workers' compensation insurance and that she did not destroy any documents because there were none to destroy:

> Q Before we took a break, you explained the Department of Labor was investigating because the hotel had no workers comp, and that Keith [Morcroft] started a lawsuit. Is that right?
>
> A Yes.
>
> Q Did you destroy the documents?
>
> A There were no documents really. There was like, no insurance, no, anything valid.
>
> Q Okay. So, you didn't destroy anything?
>
> A No, I couldn't find. There was nothing.

Ex. A at 144:23-145:7.

When asked about this same statement by Plaintiffs' counsel, Rodriguez could not actually recall receiving such an instruction from Mr. Khosa:

> Q (BY Mr. Barroukh) Did Oneil ask you to destroy key documents, as if there was a hurricane that destroyed them?
>
> …
>
> A I don't recall.

Ex. A at 166:7-11. She did, however, reiterate that she "did not destroy anything" in connection

8

with the DOL investigation:

> Q (BY Mr. Barroukh) … Did you destroy any documents that would have been part of that FLSA investigation?
>
> …
>
> **A I did not destroy anything.**

Ex. A at 170:3-9 (emphasis added). Her deposition testimony that she does not recall Mr. Khosa instructing her to destroy any documents in connection with the investigation and that she did not destroy anything herself comports with Mr. Khosa's sworn statement that he "never, nor any other representative of MMI at my direction, instructed Ms. Rodriguez to destroy any documents in connection with any pending litigation or government investigation." Ex. B, ¶ 15.

Rodriguez further stated that, with regard to timecards used by employees to punch in and out of work, while some timecards were thrown out in the process of cleaning the room she stayed at in the Hotel when Rodriguez was terminated, Mr. Khosa did not explicitly identify those documents to be thrown out:

> Q (By Mr. Barroukh, Plaintiffs' counsel) Now you said that Oneil previously, in an instan[ce] or circumstance regarding [his] Rolex that went missing, he threw out timecards. Is that correct?
>
> A Yes, not him physically. He was standing present in the room when I had two other housekeepers in there with me, and he was instructing us to just throw everything away. Everything that was in my room since I was leaving, he just said, throw everything away. And that was Adriana who was in the room. She can testify to that. And there were one or two more housekeepers that were in there.
>
> Q Do you know if Mr. Khosa identified the time courts [sic] before he asked you to throw those away?
>
> A I don't believe so. I mean, it was all in plain sight, what we were throwing, he was standing there, but I did it verbally, or nobody verbally said, look, these are timecards. It was just out in the open and just put in the box.

Ex. A at 166:12-167:6.

Of course, at the time of Ms. Rodriguez's termination from the Hotel, Mr. Khosa denies having instructed anyone to throw out anything that was in her room. Ex. B, ¶ 15. There is also no evidence that any allegedly thrown out records at the time Rodriguez was terminated related to or impact Plaintiff's claim. Even then, the Payroll Spreadsheet which Defendants produced aggregated any data that was contained in the timecards, which Gonzalez testified was accurate. The timecards themselves would have had only limited use to Plaintiffs, as they did were not all dated making it impossible to determine which payroll period they referenced. *See* **Exhibit F** (Exhibit 12 to A. Gonzalez Dep.).

Finally, in regard to documents that were allegedly made to look as if they were damaged by a storm or water, Rodriguez testified at her deposition that it was actually Aileen Gonzalez, her predecessor, who allegedly received this instruction from Mr. Khosa:

> Q Okay. And did Aileen ever tell you to discard timecards?
>
> A She never told me to discard. She told me that she was told to discard certain documents while she was there.
>
> …
>
> Q And to confirm Aileen told me that Oneil asked her to destroy these documents as if a storm or hurricane had hit –
>
> A Yes.
>
> Q -- is that correct?
>
> …
>
> A Yes.

Ex. A at 168:15-170:2.

Gonzalez, however, clarified that what she had been referring to was the disposal of old employee files from storage and that this event occurred in November 2020—long before Plaintiffs

began working as front desk agents in the summer of 2023. Ex. C at 128:7-20 ("Q That was well before Akari and Hazel ever started working at the hotel, right? A Yes."); *id.* at 179:6. Any documents destroyed by Gonzalez were, therefore, not only destroyed prior to when any litigation by Plaintiffs would have been reasonably foreseeable, but were wholly irrelevant to the dispute in this case. *See Penick*, 481 F. Supp. 3d at 1291.

### 2. Even if Declarations Were Taken as True, They Do Not Evidence Spoliation.

Moreover, even if the declarations were taken as true, they do not establish that MMI spoliated the documents at issue in this case. Instead, Plaintiffs' Motion makes an illogical leap to connect the payroll and time records created by Gonzalez, which would have included Plaintiffs' information, and the records Rodriguez allegedly destroyed, without any basis for such a connection. *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1062 (W.D. Tenn. 2009) (noting that the movant "must produce some evidence suggesting that a document or documents relevant to substantiating [its] claim would have been included among the destroyed files" (internal quotation marks omitted)).

Specifically, Plaintiffs' Motion asserts that (a) "Gonzalez…declared under penalty of perjury that she maintained timesheets and records for Plaintiffs that she stored on a company computer and informed Khosa where they were and how to access them" and that (b) "Rodriguez, the former General Manager for Defendants subsequent to Plaintiffs' employment, declared under penalty of perjury that Khosa demanded she destroy key financial records during a Department of Labor investigation, and that she took affirmative steps to destroy these documents," and concludes that (c) Defendants "destroy[ed] perhaps the only evidence of the dates and times worked by Plaintiffs[.]" Motion at 8-9.

For Plaintiffs' conclusion to be true, the documents allegedly destroyed by Rodriguez

11

would have to contain the spreadsheet created by Gonzalez (or any other employee records belonging to Plaintiffs). Neither the Motion nor the declarations, however, provide any support or basis for concluding that those records were contained in any documents allegedly destroyed by Rodriguez. Therefore, even assuming all statements in the declarations are true, they do not establish any spoliation by Defendants in connection with this matter.

And, to be sure, Valerie Frapp's testimony, which Plaintiffs vaguely refer to—without quoting or attaching a deposition transcript—to suggest that it "confirms Rodriguez's statement that records had been destroyed," actually would support the conclusion that any water-damaged documents were the result of *accidental* water damage:

> A So at Casa Morada there was like a flood where the water had came through into the back office and there's lots of documents that had been stuck together, like I was trying to look for some papers but if it had rained on some papers like if you tried to pull them apart you couldn't. Everything on the paper would be blurred from the water damage and so that's why I'm saying. I did the best I could. There were so many papers and they were destroyed. You couldn't tell what you were looking at they were so stuck together.
>
> Q When you say the documents were destroyed is it the hurricane had hit the building?
>
> A I don't know what that would look like because I'm not from Florida so I don't know how a hurricane hitting would make it look but to me it would be like if the river out here at Tapoco overflowed and came in the office and got up in the filing cabinet how it would stick everything together. So to me it looked like flood water or if the roof fell in and the rain was coming in.

**Exhibit G** at 48:3-20 (Excerpts of V. Frapp Dep.).

Plaintiff also gives no indication as to what allegedly water damaged documents Ms. Frapp might have been referring to, whether they relate to the Plaintiff's claim, or otherwise offer the context in which she found them.  Thus, neither Plaintiffs' Motion nor the supporting declarations establish or support any spoliation in connection with this lawsuit.

    **3. Defendants Did Not Engage in Spoliation.**

Plaintiffs' Motion fails to establish spoliation by Defendants for the simple reason that it did not occur, as evidenced by MMI's production of the requested Payroll Spreadsheet, attached hereto as Exhibit D.

Per the testimony of former General Manager Gonzalez, all employee timecard records would be entered into the Payroll Spreadsheet, where Gonzalez would then calculate the salary and/or hourly wages and overtime owed to each employee. *Id.* at 29:8-13; 123:24-124:1, 132:6-12. Gonzalez confirmed that the Payroll Spreadsheet is an accurate reflection of the hours worked and money earned by each employee, including Plaintiffs:

> Q This information would've matched the information, the data on the timecards, right?
> A Yes.
> Q So, even if the timecards don't exist any longer, this payroll spreadsheet memorializes the time what --
> A Should be by --
> Q -- by the employees.
> A Yes.

*Id.* at 133:3-11. Specifically, she confirmed that Plaintiff Johnson's hours contained in the Payroll Spreadsheet would accurately reflect the hours he worked. In her deposition, Gonzalez further confirmed that, to her knowledge, Plaintiff Johnson was paid for any overtime due to him and reflected in the spreadsheet. *Id.* at 112:1-2; *see also, e.g.*, Ex. D at DEF000924. Thus, the now-produced Payroll Spreadsheet contains all the information needed for Plaintiff Johnson to support his claim for unpaid overtime wages. *See* Ex. D.

Moreover, Gonzalez confirmed that Plaintiff Thompson was paid on an hourly basis for only the first few months of her employment, and that after she was switched to a salary basis, Thompson did not have to clock in or out each day as an exempt employee, meaning that no timecards would have existed for the majority of her employment with the Hotel. Ex. C at 112:1-2; *see also, e.g.*, Ex. D at DEF000924. And, of course, documents that do not exist cannot be

13

destroyed. As for the few payroll periods when Thompson was earning an hourly wage, the Payroll Spreadsheet reflects the specific hours worked during those payroll periods. *See* Ex. D.

Finally, in regard to Defendant Enthusiast, the Enthusiast entity was never an employer of Plaintiffs, and never had any operational or managerial control over MMI, the Hotel, or the Hotel's employees. In fact, the LLC itself has no employees. Ex. B, ¶ 6. Therefore, because Defendant Enthusiast never possessed any employee records or any other files pertaining to Plaintiffs, it did not "purposely [or otherwise] lose[] or destroy[] relevant evidence[.]" *AZ55S, LLC v*, 2023 WL 4564631 at *2.

### B. FLSA's Recordkeeping Requirements Do Not Warrant Sanctions in this Matter.

#### 1. Defendant Complied with FLSA's Recordkeeping Requirements.

Plaintiffs cite to *Austrum v. Federal Cleaning Contractors, Inc.,* 149 F. Supp. 3d 1343 (S.D. Fla. 2016) in support of their motion. *Austrum,* however, is readily distinguishable. For one, that case involves 29 CFR § 1602.4. *Id.* at 1347-48. § 1602.4, however applies to discrimination claims under Title VII, the ADA and GINA. 29 CFR § 1602.14 (noting that an employer must keep records where claims are brought "under title VII, the ADA, or GINA.") Plaintiffs' motion, however, involves *only* their wage claim under FLSA and not a claim involving discrimination. As such, *Austrum* has no application. *See Austrum,* 149 F. Supp. 1347 (noting that claim was brought under Title VII).

Even if § 1602.14 did apply (it does not), time sheets are not "personnel or employment record[s]" under §1602.14, which defines such term as "including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship." Time sheets do

not include "hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation," and as such, are not personnel or employment records. *Lucas v. Brooklyn Academy of Music,* 129 F. 3d 113 (2d Cir. 1997) ("Lucas also argues that BAM's failure to produce his time cards at trial is reversible error since BAM was required to preserve employment records in accordance with 29 C.F.R. § 1602.14. **We disagree. This provision requires preservation of personnel or employment records-which does not include time cards**. 29 C.F.R. § 1602.14.") (emphasis added). Indeed, as conceded by Plaintiffs, *Austrum* involved the destruction of a job application *not* time sheets. *Austrum,* 149 F. Supp at 1345-46.

With regard to claims under FLSA, the retention of time sheets is covered by 29 CFR §§ 516.2, 516.3 and 29 U.S.C. 211(c). Notably, §211(c) does not require an employer to maintain *all* information regarding time records. *Garcia v. Palomino, Inc.,* 738 F. Supp. 2d 1171, 1174 (D. Kan. 2010) ("The regulations and statute cited by Plaintiffs merely require that the employer maintain and preserve records showing the exact hours an employee worked each workday and the total hours he worked each workweek; **they do not necessitate that every document that contains information on how long the employee worked be preserved.")** (emphasis added).

Here, MMI has retained and produced the Payroll Spreadsheet showing all hours worked by Mr. Johnson. *See* Ex. C at 133:3-11**.** Accordingly, it has met the requirements of §211(c).

Furthermore, salaried employees, such as Ms. Thompson, are exempt from the record keeping requirements of FLSA. 29 CFR § 516.3 (noting that employers are not required to maintain records pertaining to regular hourly rate of pay for any work week, overtime hours and daily straighttime earned). Therefore, MMI complied with the FLSA's recordkeeping

requirements for both Plaintiffs.[1]

### 2. Absence of Timecards Does Not Adversely Impact Plaintiffs' Case and Does Not Warrant Plaintiffs' Requested Sanctions.

Even if MMI had not fully complied with the requirements, the remedy for the failure to adhere to the retention requirements under FLSA is not a sanction. Rather, the Court is to apply a burden shifting standard of proof to determine the wages owed to the plaintiff:

> Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held that **an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.** If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Allen v. Board of Public Educ. For Bibb County,* 495 F. 3d 1306, 1315-16 (11th Cir. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946)) (emphasis added).

The appropriate remedy in a case where an employer has failed to keep and preserve payroll records is a jury instruction that "the plaintiff may establish the amount of any such damages at trial by inference and approximation." *Secretary of Labor, United Stated Department of Labor v. Caring First, Inc.,* 2016 WL 11794692, at *5 (M.D. Fla. Sept. 22, 2016) ("Thus, so long as Plaintiff is able to present sufficient evidence of an FLSA violation and establish that Defendants failed to maintain payroll records in violation of 29 U.S.C. § 211(c), the **Plaintiff will be entitled to a jury instruction that Plaintiff may establish damages for the 107 individuals at issue by estimation or approximation.**" (emphasis added)); *see also McLaughlin v. Stineco,*

---

[1] Indeed, Plaintiffs admit that "[t]he evidence in this case is that" Defendant MMI "made and/or kept the FLSA-required documentation[.]" Motion, at 7.

*Inc.,* 697 F. Supp. 436, 450 (M.D. Fla. 1988).

Therefore, even if Plaintiffs could establish a violation of the FLSA by MMI, their requested sanctions would not constitute appropriate relief.

### C. Plaintiffs' Motion was Premature and Should Have Been Withdrawn.

Finally, Defendants assert that Plaintiffs' Motion was premature in that Plaintiffs should have moved to compel the production of the payroll and time records before putting the cart before the horse by seeking sanctions for the alleged destruction of these documents. Despite MMI's inadvertent discovery response that no responsive documents existed (which has since been amended), Plaintiffs were aware that MMI did, in fact, produce some responsive timecards, which suggested that MMI was in possession of responsive documents that would have justified a motion to compel. When conferring with Defendants' new counsel after their substitution into this case in early May 2025, Plaintiffs' counsel did not take the opportunity to raise or inquire about any missing documents.

Instead, Plaintiffs' counsel served a draft of the Motion on defense counsel ahead of its filing on May 21, 2025. Within seven days of receiving the Motion and learning about the discovery deficiencies, and **before the Motion was filed**, Defendants' new counsel began producing the relevant documents as they were located in MMI's system. Defendants' new counsel informed Plaintiffs' counsel that searches for all of the responsive payroll and time records were continuing. Despite this, Plaintiffs' counsel proceeded with the Motion.

Moreover, as set forth above, not only did Plaintiffs' Motion lack the factual basis to establish spoliation at the time it was filed, but, since the filing of the Motion, the witness who submitted the declaration relied on by Plaintiffs in their Motion has recanted her testimony regarding the destruction of documents. Still, even with the benefit of this testimony, Plaintiffs

refused to withdraw their Motion, forcing Defendants and their counsel to spend time and resources drafting this Response. In light of this procedural history and the arguments set forth above, Defendants respectfully request that the Court exercise its inherent power and award Defendants their attorneys' fees incurred in connection with the drafting of this Response to Plaintiffs' Motion, which was filed entirely without color. *Landfall 2, Inc. v. Datascore-AI, LLC*, No. 22-CV-80801, 2024 WL 693088, at *2 (S.D. Fla. Jan. 30, 2024), *report and recommendation adopted*, No. 22-CV-80801, 2024 WL 691919 (S.D. Fla. Feb. 20, 2024) ("[U]nder the inherent power of the court to supervise and control its own proceedings, an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." (quoting *Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC*, 510 F. Supp. 2d 1043, 1046 (S.D. Fla. 2007))); *see also Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1335 (11th Cir. 2002).

## **CONCLUSION**

Given that Rodriguez has now recanted having "destroyed" any documents, and considering Defendants' supplemental production of the Payroll Spreadsheet which effectively moots the Motion, Defendants respectfully request that the Court deny Plaintiffs' request for spoliation sanctions on the papers and award them their attorneys' fees incurred in defending against Plaintiffs' premature and meritless Motion. To the extent the Court, however, finds that there are issues of fact that still need to be resolved, Defendants respectfully request that the Court schedule an evidentiary hearing.

**CALDERA LAW PLLC**
7293 NW 2nd Ave
Miami, Florida 33150
Telephone: (786) 321-3811

By:   */s Anthony Narula*
   Anthony V. Narula, Esq. (FBN 56546)
   anthony@caldera.law
   Rasheem Johnson, Esq. (FBN 1011350)
   rasheem@caldera.law
   Joanna Niworowski, Esq. (FBN 1031440)
   joanna@caldera.law
   eservice@caldera.law