# EXHIBIT A

Daniella Esther Rodriguez - 6/5/2025

1

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION NO.: 4:4-CV-10017 MARTINEZ SANCHEZ


AKARI JOHNSON, ET. AL.,

        Plaintiff,

vs.

MMI 82, LLC, ET. AL.,

        Defendant.


_____

ZOOM DEPOSITION

Thursday, June 5, 2025

10:00 a.m. - 2:31 p.m.

DEPOSITION OF DANIELLA ESTHER RODRIGUEZ


        Taken before JANSEN VIANA, Court Reporter, a

Notary Public for the State of Florida at Large,

pursuant to Notice of Taking Deposition filed in the

above-styled cause.

144

```
1    Morada. I was responsible for interacting with the DOL

2    investigator, but Oneil made sure he approved all of my

3    e-mail communications before I sent them. During this

4    investigation, Oneil instructed me to make key files

5    including paychecks, pay stubs and other financial

6    records "disappear" as if "there was a hurricane that

7    destroyed them."

8         Oneil explicitly asked me to destroy key financial

9    records, even though I was not comfortable doing so. I

10   had no choice but to follow Oneil's orders and destroy

11   some of these key documents. What was the Department of

12   Labor investigating?

13        A    We didn't have a workman's comp, and Keith

14   Morecraft started a lawsuit.

15             MR. NARULA: Let me take a quick break,

16        please, to the bathroom.

17             THE COURT REPORTER: -- 01:24.

18             (Thereupon, a short discussion was held off

19             record.)

20                      (Deposition resumed.)

21             THE COURT REPORTER: We are back on the record

22        at 01:33.

23        Q    (By Mr. Narula) Before we took a break, you

24   explained the Department of Labor was investigating

25   because the hotel had no workers comp, and that Keith
```

145

1   Morecraft started a lawsuit. Is that right?

2        A    Yes.

3        Q    Did you destroy the documents?

4        A    There were no documents really. There was

5   like, no insurance, no, anything valid.

6        Q    Okay. So, you didn't destroy anything?

7        A    No, I couldn't find. There was nothing.

8             MR. BARROUKH: Objection to form.

9        Q    (By Mr. Narula) Paragraph 19 of the

10  declaration states, Casa Morada is a toxic, hostile

11  working environment that caused me severe emotional

12  distress.  The hotel hired you even though you didn't

13  have prior experience in the hotel industry, right?

14       A    Correct.

15       Q    Not only were you given a job, then you

16  became the General Manager, right?

17       A    That's what I was basically hired to do.

18       Q    Mr. Khosa then gave you money to buy work

19  clothes after you were hired, right?

20       A    Correct.

21       Q    He didn't have to do that. Was that a, no?

22       A    No.

23       Q    Okay. The hotel allowed you to sleep at the

24  hotel free of charge because you live far away, right?

25       A    Correct.

166

1    instructed me to make key files, including paychecks,

2    pay stubs and other financial records disappear as if

3    there was a hurricane that destroyed them.  Is that a

4    true statement?

5            MR. NARULA: Objection, asked and answered.

6            MR. BARROUKH: You can answer.

7        Q    (BY Mr. Barroukh) Did Oneil ask you to

8    destroy key documents, as if there was a hurricane that

9    destroy them?

10           MR. NARULA: Same objection.

11       A    I don't recall.

12       Q    (BY Mr. Barroukh) Now you said that Oneil

13   previously, in an instant or circumstance regarding my

14   Rolex that went missing, he threw out timecards. Is

15   that correct?

16       A    Yes, not him physically. He was standing

17   present in the room when I had two other housekeepers

18   in there with me, and he was instructing us to just

19   throw everything away. Everything that was in my room

20   since I was leaving, he just said, throw everything

21   away. And that was Adriana who was in the room. She can

22   testify to that. And there were one or two more

23   housekeepers that were in there.

24       Q    Do you know if Mr. Khosa identified the time

25   courts before he asked you to throw those away?

167

1          MR. NARULA: Objection, speculation.

2      A    I don't believe so. I mean, it was all in

3  plain sight, what we were throwing, he was standing

4  there, but I did it verbally, or nobody verbally said,

5  look, these are timecards. It was just out in the open

6  and just put in the box.

7      Q    (BY Mr. Barroukh) And is every statement made

8  in this declaration truthful?

9      A    Yes.

10     Q    Now Ms. Frapp at her deposition testified

11 that she found documents in a certain file cabinet

12 destroyed as if a storm had done. Do you understand?

13     A    Um-hum.

14     Q    Do you know, or do you have any reason to

15 believe that why those documents were destroyed, or do

16 you have knowledge as to why those documents were

17 destroyed?

18         MR. NARULA: Objection, speculation.

19     A    I am not sure why they would have been

20 destroyed.

21     Q    (BY Mr. Barroukh) Do you know how those

22 documents came to become damaged by water?

23         MR. NARULA: Objection, asked and answered.

24     A    I'm not sure because we haven't had any

25 hurricanes in the Keys in a while.

Daniella Esther Rodriguez - 6/5/2025

168

1       Q    (BY Mr. Barroukh) And when it comes to

2  collecting timesheets and timecards, whose

3  responsibility was it as to those two sets of

4  documents?

5       A    So, the actual timecards, normally, if

6  Adriana was working at the front desk, she would open,

7  and it was time for the payroll cut. She would grab

8  them from the room and leave them for me at the front

9  or, if it was me, I would just go when I would leave

10  the room, grab them and go do payroll.

11      It was either only basically just me, and every

12  now and then, Adriana and she would just grab the whole

13  chunk and leave them for me so I can start processing

14  payroll.

15       Q    And did you ever throw out any timecards at

16  any point during --

17       A    I never did.

18       Q    Okay. And did Aileen ever tell you to discard

19  timecards?

20       A    She never told me to discard. She told me

21  that she was told to discard certain documents while

22  she was there.

23          MR. NARULA: Objection, hearsay.

24       Q    (BY Mr. Barroukh) Did Aileen ever tell you

25  Oneil instructed her to destroy financial records?

169

1          MR. NARULA: Objection, hearsay.

2      A    She didn't, the whole thing is he or she say,

3   this whole thing. What I am telling you is he, she says

4   what Daniel can say, everything. So, she did tell me

5   that.

6      Q    (By Mr. Barroukh) And can you continue with

7   what she told you about?

8      A    She just expressed to me, because when the

9   Department of Labor showed up, I was stressed out. And

10  I called her telling her, hey, this is what's going on.

11  I am not sure how to handle this whatnot. And then she

12  just told me, look, try to find whatever you can when

13  it comes to the timesheets, the timecard, whatever

14  documents that you have, and just have and just have it

15  ready.

16      And then she - that's when she told me, look a

17  while back something similar -- something happened, and

18  I was instructed to just get rid of the documents. And

19  then it was a hurricane that came by, or a storm or

20  something like that, something of that nature.

21      Q    And to confirm Aileen told me that Oneil

22  asked her to destroy these documents as if a storm or

23  hurricane had hit --

24      A    Yes.

25      Q    -- is that correct?

170

1              MR. NARULA: Objection, hearsay.

2         A    Yes.

3         Q    (BY Mr. Barroukh) Now, whether you intended

4    to destroy documents related to the Department of

5    Labor's FLSA investigation, whether you intended to

6    destroy those or not. Did you destroy any documents

7    that would have been part of that FLSA investigation?

8              MR. NARULA: Objection, asked and answered.

9         A    I did not destroy anything.

10        Q    (BY Mr. Barroukh) Okay. Did Oneil ever ask

11   you to destroy documents?

12        A    I don't recall.

13        Q    And again, you have no recollection as to how

14   Hazel and Akari performed their roles while they were

15   employed at the company. Is that correct?

16        A    Honestly, I don't. I heard that Hazel was

17   really good at what she did, with the events. I heard

18   Akari was really good at the front desk, which is what

19   shocked me when I found certain things. But besides

20   that, me personally, like I said, I never worked with

21   them, so I can't say for me.

22        Q    Do you know that Oneil on several occasions,

23   via text messages made advances to Hazel, asking her to

24   come over to his house?

25             MR. NARULA: Objection.

Daniella Esther Rodriguez - 6/5/2025

190

1                        CERTIFICATE OF OATH

2

3

4

5

6       I, JANSEN VIANA, Court Reporter, Notary Public, State

7   of Florida, certify that DANIELLA ESTHER RODRIGUEZ
                                              th
8   personally appeared before me on the 5   day of June 2025,

9   and was duly sworn.

10          Signed this 20th day of June 2025.

11

12

13          _____Jansen Viana_____

14          JANSEN VIANA, Court Reporter

15          Notary Public, State of Florida

16          Commission No. HH678164

17          Commission Expires: 05/21/2029

18

19

20

21

22

23

24

25

Daniella Esther Rodriguez - 6/5/2025

191

2          CERTIFICATE OF REPORTER

7       I, JANSEN VIANA, Court Reporter, certify that I was

8    authorized to and did report the Deposition of DANIELLA

9    ESTHER RODRIGUEZ; that a review of the transcript was

10   requested; and that the transcript is a true and correct

11   record of my notes.

12       I further certify that I am not a relative, employee,

13   attorney, or counsel of any of the parties, nor am I a

14   relative or employee of any of the parties, attorneys or

15   counsel connected with the action, nor am I financially

16   interested in the action.

18       Dated this 20th day of June 2025.

20               _____*Jansen Viana*_____

21               JANSEN VIANA, Court Reporter